UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

JAN 1 8 2001

PER _____ cd
DEPUTY CLERK

MARIO LENARDO CRADLE
          Petitioner,

          -vs.

Case No.

# 3: CV01-0117

UNITED STATES OF AMERICA, EX. REL;
JONATHAN C. MINER, WARDEN, ALLENWOOD
FEDERAL PRISON CAMP, MONTGOMERY,
PENNSYLVANIA,
          Respondent.
------------------------------------x

FILED
SCRANTON

JAN 1 8 2001

PER _____
DEPUTY CLERK

## PETITION FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN FEDERAL CUSTODY

        Petitioner, MARIO LENARDO CRADLE, appearing pro se,
under the authority of 28 U.S.C. §2241 and FRCP 81 a(2),
respectfully states as follows:

        1.      Petitioner is restrained of liberty at Allenwood
Federal Prison Camp, Montgomery, Pennsylvania.

        2.      Petitioner is unlawfully imprisoned, restrained
of liberty and in the custody of respondent, Jonathan C.
Miner, Warden of the Allenwood Federal Prison Camp at
Montgomery, Pennsylvania, County of Lycoming, State of
Pennsylvania, in violation of the laws and Constitution
of the United States.

3.     Respondent has custody of petitioner by virtue of the judgment and sentence of the United States District Court for the Western District of North Carolina-Statesville Division, United States v. Mario Lenardo Cradle, ST-CR-90-17-1; copies of the judgment and sentencing are attached hereto and made a part hereof and marked Exhibit "A" and "B" respectively.  Petitioner entered a plea of guilty to Count One [Conspiracy to Manufacture and Possess With Intent to Distribute in Excess of 50 Grams of Cocaine Base]; Count Two [Manufacturing in Excess of 50 Grams of Cocaine Base]; Count Three [Possessing With Intent to Distribute in Excess of 50 Grams of Cocaine Base]; and Aiding and Abetting, all in violation of 21 U.S.C. §§841 (a)(1) and 846.

4.     Petitioner did not appeal his conviction and sentence to the Fourth Circuit Court of Appeals.

5.     Petitioner did not collaterally attack his convictions and sentences by filing a motion pursuant to 28 U.S.C. §2255.

6.     Petitioner has failed to adhere to the one year limitation period, as provided for under 28 U.S.C. §2255, as amended, April 24, 1996.  Petitioner's application for writ of Habeas Corpus pursuant to 28 U.S.C. §2241 is the proper avenue to raise his claim, because under the language of §2255, petitioner is barred from presenting his claim for relief and , accordingly §2255 is inadequate or ineffective

2

to test the legality of Mr. Cradles' petition.  Further, petitioner's only challenge is to the legality of his sentence and the jurisdiction of the sentencing court to impose the enhanced penalty.

7.    Petitioner made application to the United States Court of Appeals for the Fourth Circuit requesting that Court review the sentences imposed and the jurisdiction of the sentencing court to impose the enhanced penalty.  That Court declined to accept jurisdiction of petitioner's request for review.  Exhibit "C" describes the situation. [Exhibit "C" attached hereto].

8.    The question petitioner presents is whether the sentencing court was ultra vires to impose the statutory enhancement of 10 years in the absence of the government complying with the notice requirements of 21 U.S.C. §851(c). Section 851(c) is a statutorily mandated jurisdictional requirement, which is non-waivable.

9.    The failure of the government to place petitioner on notice of its intent to seek an enhanced penalty, as provided for under 21 U.S.C. §851(c) violates petitioner's right to due process, and as such petitioner is now serving an illegal sentence.

10.    Petitioner urges that he can properly raise the jurisdictional issue presented in the within petition under the provisions of Rule 12(b)(2) of the Federal Rules of

Criminal Procedure.

11.     Petitioner urges this Court to accept jurisdiction over this petition, as the facts alleged herein constitute probable cause for belief that petitioner is being detained without lawful authority.

12.     Petitioner is unlawfully imprisoned, and restrained of liberty, and in the unlawful custody of Jonathan C. Miner, Warden, Allenwood Federal Prison Camp, Lycoming County, Montgomery, Pennsylvania, in that the 10 year enhanced penalty imposed by the sentencing court was contrary to law by the government's failure to comply with the notice requirements of 21 U.S.C. §851(c), and as such, the sentencing court was ultra vires to impose such an enhancement.  Petitioner has served 120 months of his sentence; said sentence absent the enhanced 10 year penalty,  would not have exceeded 102 months, and would not have approached the 240 months imposed by the sentencing court.  Petitioner is now serving an illegal sentence.

## BRIEF HISTORY

13.     On or about April 30, 1990, petitioner was arrested by Hickory, North Carolina police, acting in concert with federal authorities.

14.     On June 6, 1990, a Western District of North Carolina Grand Jury returned a Three Count Indictment against petitioner. Count One charged that on or about April 30, 1990, the

4

defendant did conspire with others to manufacature and
possess with intent to distribute in excess of 50 grams of
cocaine base, in violation of Title 21 U.S.C. section 846.
Count Two charged that on April 30, 1990, the defendant did
manufacture and aid and abet others in  the manufacturing of
in excess of 50 grams of cocaine base, in violation of Title
21 U.S.C. Section 841(a)(1); Title 18 U.S.C. Section 2.
Count Three charged that on April 30, 1990, the defendant
did possess with intent to distribute and aid and abet others
in the possession with the intent to distribute in excess of
50 grams of cocaine base, in violation of Title 21 U.S.C.
Sections 841 (a)(1); Title 18 U.S.C. Section 2.

15.    On August 22, 1990, petitioner pursuant to
a plea agreement pled guilty to all three counts of the
indictment.

16.    Petitioner's sentence was enhanced pursuant to
the recidivist provision of Title 21 U.S.C. §841(b)(1)(A),
wich provides for a twenty year mandatory minimum term of
imprisonment for a violation of §841(a)(1) after a prior
felony drug conviction has become final.  Petitioner avers
that the prior felony drug conviction became final within
five years of the offense of conviction and, as such, the
government's failure to file and serve on petitioner its
"Notice of Intention to Seek Enhanced Penalty," as required
under 21 U.S.C. §851(c) rendered the sentencing court
"coram non judice" to impose the enhanced penalty.  Under the

current illegal judgment and sentencing, which includes an enhanced penalty of 10 years, or a total term of twenty years, petitioner contends that but for the inclusion of the 10 years enhanced penalty, his confinement could not and would not have exceeded 8.5 years.  Under the facts of this case, this petitioner is being illegally detained, as is evidenced by the above-referenced history.

<u>BRIEF IN SUPPORT OF PETITION FOR HABEAS CORPUS</u>

<u>THE SENTENCING COURT DID NOT HAVE
JURISDICTION TO IMPOSE ENHANCED
PENALTY, PURSUANT TO TITLE 21
U.S.C. SECTION 841(b)(1)(A).</u>

On August 22, 1990, petitioner, pursuant to a plea agreement pled guilty to all three counts of the indictment. Prior to petitioner entering a plea of guilty to the charged conduct, the government failed to file and serve on petitioner its Notice of Intention to Seek Enhanced Penalty, pusuant to 21 U.S.C. §851.  Section 851 provides in relevant part:

> No person who stands convicted of an
> offense under this part [21 U.S.C. §
> 841 et. seq.] shall be sentenced to
> increased punishment by reason of
> one or more prior convictions, unless
> before trial, or before entry of a
> plea of guilty, the United States
> Attorney files an information with the
> Court (and serves a copy of such
> information on the person or counsel for
> the person) stating inwriting the previous
> convictions to be relied upon.

Due Process requires that a defendant receive reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism. <u>Oyler v. Boles</u>, 368 U.S. 448, 452, 82 S. Ct. 501, 504, 7 L. Ed. 2d 446 (1962). In this regard, section 851 was enacted to fulfill this due process requirement. See <u>United States v. Johnson</u>, 944 F. 2d 396, 407 (8th Cir. 1991)(§851 allows the defendant an opportunity to determine whether to enter a plea or go to trial, and to plan his strategy with full knowledge of the consequences of a potential guilty verdict); <u>United States v. Wright</u>, 932 F. 2d 868, 882 (10th Cir.)(§851 provides the defendant an opportunity to challenge the prior convictions), cert. denied,___U.S.___, 112 S. Ct. 428, 116 L. Ed. 2d 448. See also <u>United States v. Allen</u>, 566 F. 2d 1193 (3rd Cir. 1977).

In Section 841, Congress has fixed the statutory sentence, mandating a range of imprisonment of ten years to life for a first offense, and twenty years to life for a repeated volation. In filing an information about the defendant's prior convictions, the government simply alters the range of the final penalty available to the Court by increasing the mandatory minimum sentence. Under the provisions of §851(b), the district court must then inquire of the defendant whether he affirms or denies his prior convictions. If he denies any allegation of the information or challenges the constitutionality of any conviction alleged in the information,

the Court must hold a hearing on the matter.  See 21 U.S.C.
§851(c).  Here the record is silent, as to any information
filed by the government, in compliance with the requirements
of §851.  Accordingly, the enhanced penalty imposed by the
sentencing court was contrary to law, and as a result,
petitioner is currently being illegally detained.

### SENTENCING AND TERM OF IMPRISONMENT

In the instant matter, the sentencing court adopted
the recommendations of the Probation Office's presentence
report, which based its sentencing computation on those
factors provided for under 21 U.S.C. §841(b)(1)(A).  Copy
of the presentence  report is attached hereto and made a
part hereof and marked Exhibit "D."

Under 21 U.S.C. §841(b)(1)(A), any person convicted
of possession with intent to distribute more than 50 grams
of cocaine base "shall be sentenced to a term of imprisonment
which may not be less than 10 years or more than life."
Furthermore, if the defendant "commits such a violation after
a prior conviction for a felony drug offense has become final,
such person shall be sentenced to a term of imprisonment which
may not be less than 20 years and not more than life
mprisonment."  Id.  In order for the court to exercise
jurisdiction to impose an enhanced sentence based on prior
convictions, however, the government must comply with the
procedural requirements of 21 U.S.C. §851.  An event, to
which the government failed to comply with in the instant matter.

A copy of the Court docket sheet is attached hereto and made a part hereof and marked Exhibit "E."  See also Defense Counsel letter indicating in essence that no such notification was provided.  A copy of defense counsel letter is attached hereto and made a part hereof and marked as Exhibit "F."

In sum, the district court may impose an enhanced sentence only after determining (1) that the government timely filed a proper information, (2) that the government served a copy of the information on the defendant or his counsel, and (3) that the defendant does not contest or failed to contest successfully the conviction in the information. The court may then select a sentence within the parameters set by Congress, ranging from ten years to life if the information is improper, or twenty years to life if it is valid.  Accordingly, petitioner's total incarceration time should not have exceeded 102 months.  Petitioner has been incarcerated 120 months, and is therefore entitled to immediate release.  The petitioner asserts taht the sentencing court lacked subject matter jurisdiction with respect to the enhanced penalty.  The issue of subject matter jurisdiction may be raised any place and at any time.  See Federal Rules of Criminal Procedure 12 (b)(2).

WHEREFORE, Petitioner MARIO LENARDO CRADLE requests this Court to issue a Writ of Habeas Corpus Ad Subjiciendum commanding respondent to produce the body of Petitioner before

this Court, at a time and place to be specified by this Court, so that this Court may further inquire into the lawfulness of Respondent's custody of petitioner, to discharge petitioner from Respondent's custody, and to grant Petitioner such other and further relief to which petitioner may be entitled in this proceeding.

DATED THIS __5__ DAY OF NOVEMBER, 2000

Respectfully submitted,

Mario Lenardo Cradle
#082 53-058
FPC Allenwood
P.O. Box 1000
Montgomery, PA

Exhibit A

Case 1:01-cv-00117-WWC-PT    Document 1    Filed 01/18/2001    Page 12 of 80

AO 245 S (3/88) Sheet 1 - Judgment Including Sentence Under the Sentencing Reform Act

**FILED**
**STATESVILLE, N. C.**

# United States District Court

OCT 1 7 1990

_____WESTERN_____ **District of** _____NORTH CAROLINA_____

U. S. DISTRICT COURT
WESTERN DISTRICT OF N.C.

STATESVILLE DIVISION

UNITED STATES OF AMERICA

V.

MARIO LENARDO CRADLE

**JUDGMENT INCLUDING SENTENCE
UNDER THE SENTENCING REFORM ACT**

Case Number      ST-CR-90-17-1

**(Name of Defendant)**

Roger T. Smith, appointed
_____
Defendant's Attorney

**THE DEFENDANT:**

☒ pleaded guilty to count(s) _1, 2 & 3_ .
☐ was found guilty on count(s) _____ after a
  plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Count Number(s) |
|---|---|---|
| 1: 841(a)(1) 846 | Conspiracy to unlawfully manufacture and possess w/intent to distribute in excess of 50 grams of cocaine base, a Sch. II narcotic controlled substance | 1 |
| 1: 841(a)(1) 3: 2 | Manufacturing in excess of 50 grams of cocaine base, a Sch. II narcotic controlled substance & aiding & abetting | 2 |
| 1: 841(a)(1) 3: 2 | Possessing w/intent to distribute in excess of 50 grams of cocaine base, a Sch. II narcotic controlled substance & aiding & abetting | 3 |

The defendant is sentenced as provided in pages 2 through ___4___ of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____ ,
  and is discharged as to such count(s).
☐ Count(s) _____ (is)(are) dismissed on the motion of the
  United States.
☐ The mandatory special assessment is included in the portion of this Judgment that imposes a fine.
☒ It is ordered that the defendant shall pay to the United States a special assessment of $ _150.00_ ,
  which shall be ~~due immediately~~ paid as directed by U. S. Probation Office.   Interest waived

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of residence or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec. Number:
  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

Defendant's mailing address:
  c/o Buncombe Co. Jail

Asheville, N. C.

Defendant's residence address:
  same as above

A True Copy
TESTE:
Frank G. Johns, Clerk
By_____
Deputy Clerk

October 9, 1990
_____
Date of Imposition of Sentence

_____
Signature of Judicial Officer

RICHARD L. VOORHEES, U. S. DISTRICT JUDGE
_____
Name & Title of Judicial Officer

October 9,  1990
_____
Date

AO 245 S (3/88) Sheet 2 - Imprisonment

Defendant: Mario Lenardo Cradle                          Judgment—Page __2__ of __4__
Case Number: ST-CR-90-17-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of __TWENTY (20) Years on each of Counts 1, 2 & 3 to run concurrently__ to each count

☐ The Court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district,

    ☐ at _____ a.m. p.m. on _____ .

    ☐ as notified by the Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons

    ☐ before 2 p.m. on _____.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation Office.

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____ a

_____ , with a certified copy of this Judgment

_____
United States Marshal

By _____
Deputy Marshal

AO 245 S (3/88) Sheet 3 - Supervised Release

Judgment—Page __3__ of __4__

Defendant: Mario Lenardo Cradle
Case Number: ST-CR-90-17-1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of ____

___ TEN (10) YEARS on each of Counts 1, 2 & 3 to run concurrently to each count

While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

☐ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

1. Within 72 hours of release from prison defendant to report to the probation office in the district where released.
2. Not commit any local, state or federal crimes.
3. Obey standard conditions of supervised release.
4. Participate in a program of drug and alcohol treatment and testing as directed by probation officer.
5. Not possess a firearm or other dangerous weapon.

AO 245 S (3/88) Sheet 5 - Standard Conditions of Probation

Judgment—Page __4__ of __4__

Defendant: Mario Lenardo Cradle
Case Number: ST-CR-90-17-1

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;

2) the defendant shall not leave the judicial district without the permission of the court or probation office

3) the defendant shall report to the probation officer as directed by the court or probation officer and sha submit a truthful and complete written report within the first five days of each month;

4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instruction of the probation officer;

5) the defendant shall support his or her dependents and meet other family responsibilities;

6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer fo schooling, training, or other acceptable reasons;

7) the defendant shall notify the probation officer within seventy-two hours of any change in residenc or employment;

8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substance except as prescribed by a physician;

9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;

10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associat with any person convicted of a felony unless granted permission to do so by the probation officer;

11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere an shall permit confiscation of any contraband observed in plain view by the probation officer;

12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questione by a law enforcement officer;

13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforce ment agency without the permission of the court;

14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasione by the defendant's criminal record or personal history or characteristics, and shall permit the probatio officer to make such notifications and to confirm the defendant's compliance with such notificatio requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

Exhibit 8

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH CAROLINA

STATESVILLE DIVISION

UNITED STATES OF AMERICA            *
                                    *
        Plaintiff                   *
                                    *    ST-CR-90-17-3
VERSUS                              *
                                    *
MARIO LEONARDO CRADLE, BONNIE       *    SENTENCING
EUGENE WILLIAMS, JR., PAUL ERIC     *
WILSON                              *
                                    *
        Defendants                  *

TRIAL:              HONORABLE RICHARD L. VOORHEES

TRANSCRIPT:         REPORTER'S OFFICIAL TRANSCRIPT
                    OF PROCEEDINGS IN ABOVE CAUSE

LOCATION:           UNITED STATES DISTRICT COURTHOUSE
                    STATESVILLE, NORTH CAROLINA

TRIAL DATE:         OCTOBER 9, 1990

TRANSCRIPT FILED:   *Donald C. Statesville filed 4/7/92*

ORDERED BY:         *Mr. Cradle, Deft & Ms. Lisa Crane*

BILL HOGAN, RPR
Official Court Reporter
United States District Court
P.O. Box 1632
Asheville, N.C.  28802
(704) 252-7294

-55-

GOVERNMENT
EXHIBIT

INDEX

a

THELMA WILLIAMS

DIRECT EXAMINATION,
    QUESTIONS BY MR. TUCKER:...........................

CROSS EXAMINATION,
    QUESTIONS BY MR. BRADFORD .........................

WITNESS WILLIAMS EXCUSED:..............................


MARGARET MCCLOY

DIRECT EXAMINATION,
    QUESTIONS BY MR. TUCKER:...........................

WITNESS MCCLOY EXCUSED:................................


PASTOR SARAH BLACKBURN

DIRECT EXAMINATION,
    QUESTIONS BY MR. TUCKER:...........................

WITNESS BLACKBURN EXCUSED:.............................


MONICE GAITHER

DIRECT EXAMINATION,
    QUESTIONS BY MR. TUCKER:...........................

WITNESS GAITHER EXCUSED:...............................


BONNIE WILLIAMS SR.

DIRECT EXAMINATION,
    QUESTIONS BY MR. TUCKER:...........................

WITNESS B. WILLIAMS EXCUSED:...........................

CHRISTINE NICHOL

DIRECT EXAMINATION,
    QUESTIONS BY MR. TUCKER:...........................

WITNESS NICHOL EXCUSED:................................

b

## INDEX

SENTENCES – CRADLE: ............................................

          – WILSON: ............................................

          – WILLIAMS: ............................................


END OF TRANSCRIPT: ............................................

APPEARANCES:
    FOR THE PLAINTIFF,
        UNITED STATES OF AMERICA:

                Mr. Bob        :, AUSA
                United States District Courthouse
                N.C.  28 01


    FOR THE DEFENDANT,
        MARIO LEONARDO CRADLE:

                Mr. Roger T. Smith, appt.
                PH: (704) 254-4658


        BONNIE EUGENE WILLIAMS, JR.:

                Mr. Robert P. Tucker, II, appt.
                (704) 252-1248

        PAUL ERIC WILSON:

                Mr. Stanley Young, appt.
                (704) 255-8569

    BE IT REMEMBERED that in the United States District

Court for the Western District of North Carolina, Statesv

Division, in the United States Courthouse, in the City o

Statesville, State of North Carolina, on the 9th day of

October, 1990, the above entitled cause came on for hear

before Honorable Richard L. Voorhees, Judge of said Cour

and the proceedings of the trial are in the words and figu

following, to-wit:

                _____

                Bill Hogan, Official Court Repor
                    United States District Court

−58−

3

(Whereupon the Court reconvened and the followin

proceedings were had:)

THE COURT:  We have three cases before us for

sentencing.  Mr. Cradle and Mr. Williams and Mr.

Wilson.

Mr. Smith, have you had an adequate opportunity

to go over the pre-sentence report with your client?

MR. SMITH: Yes, sir.

THE COURT:  Are there any objections other than

what you've already set forth?

MR. SMITH:  I take Your Honor, has received my

objections which have been noted by the probation

officer and other than those we have no objections

to the report.

The only objections regarding the dates over

there entering of the pleas by the Co-Defendants

and the two point reduction we feel Mr. Cradle is

entitled to because of his admission of respon-

sibility.

THE COURT: What says the Government concerning

the adjustments?

MR. BRADFORD: Well, Your Honor on this particul

Defendant we agreed for a two point acceptance of

responsibility. However, as the probation officer

has pointed out in his addendum that that would have

4

1    absolutely no effect even though he has accepted

2    responsibility. Because of the prior conviction

3    the minimum mandatory went up from ten years to twen

4    years. And, therefore, cuts off the acceptance of

5    responsibility. It would appear the only way the

6    Defendant could ever get any help is if he could

7    get substantial assistance to the United States by

8    delivering higher ups in the organization.

9        THE SMITH: I would agree that that--in that

10    effect as Mr. Bradford has reported. I have offered

11    and continue to offer to the Government Mr. Cradle'

12    assistance. I think the Government probably evalua

13    to some extent the ability of Mr. Cradle to give

14    substantial assistance and have their own opinion

15    about that. But we do offer that to the Government

16    for whatever purpose outstanding.

17        THE COURT: All right.

18        Well, that would seem to be a moot point as fa

19    as the calculation of the range.

20        MR. SMITH: Yes, sir.

21        THE COURT: Will you be offering any evidence?

22        MR. SMITH: No, sir.

23        THE COURT: All right.

24        Now, then, Mr. Young...

25        MR. YOUNG: Yes, sir.

5

THE COURT:  Have you and the Defendant had an

opportunity to go over the pre-sentence report?

MR. YOUNG: I've reviewed, Your Honor, he inform

me he's reviewed it once before and is reviewing it

again.  There--I guess it's just--since there's thr

Defendants involved and I understand the probation

officer prepared this from--from records and docume

contained in the file without the benefit of a form

interview and that paragraph eight it indicates my

client was the one that was running from the car, w

is another Defendant.

Other than these areas--can correct in open c

here, Your Honor, we would object to the denial of

two point credit for acceptance of responsibility.

The U.S. Attorney may agree that we're entitle

to it. If not, since he wasn't formally interviewed

what I would propose to do to the Court is call my

client and offer evidence so that he may admit and

then argue Your Honor should entitle us to that

two points.

THE COURT: What says the Government?

MR. BRADFORD:  Your Honor, Defendants have plea

guilty.  They have signed full cooperation agreemen

They agreed to cooperate with the United States.  I

know of nothing which would go against that.  But I

1   can't say that they have been interviewed by anybody

2   yet but that would--that would show me that they

3   do intend to accept their responsibility in the

4   case based upon the fact that they've agreed not onl

5   to plead guilty but to cooperate fully with the

6   United States in order to get--.

7        THE COURT: All right.

8        The Court would believe the Defendant Wilson is

9   entitled to a two point credit. So it would appear

10   that his category then would be offense level thirty

11   two and criminal history category roman numeral II.

12   Is that your calculation, Mr. Young?

13        MR. YOUNG: Yes, sir, Your Honor. And I spoke w

14   the probation officer and I think it goes from 108 t

15   135. See if I'm correct. It was a level--offense le

16   thirty two and I believe it would go to a thirty the

17   Your Honor.

18        THE COURT: My book says that a thirty two, categ

19   two is 135 to 168.

20        MR. YOUNG: That's the way it is currently figur

21   I think, without the acceptance of responsibility, Y

22   Honor.

23        THE COURT: You're--you're right. So it's 108

24   to 135?

25        MR. YOUNG: Yes, sir.

7

1    THE COURT:  Mr. Tucker, have you and the Defen___

2    Williams had an opportunity to review the pre-sente___

3    report?

4    MR. TUCKER:  Yes, Your Honor, we have.

5    THE COURT:  Are there any objections?

6    MR. TUCKER: Yes, Your Honor.  In paragraph six

7    of our report says that no information, the probati___

8    officer has no information that indicates that Mr.

9    Williams currently accepts his responsibility.  He

10    Again, the situation with him is the situation with

11    Wilson.  He signed a plea agreement and is willing

12    cooperate fully with the United States.  I intend to

13    him on the stand and call for testimony as to him

14    accepting full responsibility for his actions.

15    Also paragraph thirty five indicates that Mr.

16    Williams has three children, in fact, he has four.

17    I brought this matter up with the probation officer

18    prior to court today and I believe she would agree

19    with me on that.

20    THE COURT: All right.

21    MR. TUCKER:  We will be offering evidence, You___

22    Honor.

23    THE COURT: Based on the statement Mr. Bradford

24    made earlier, the Court believes the category shoul___

25    be reduced for acceptance of responsibility.  So tha___

8

1    would make it a thirty and roman numeral I.

2            MR. TUCKER: Yes, sir.

3            THE COURT: Apparently 97 to 121.

4            MR. TUCKER: Yes, Your Honor.

5            THE COURT: All right, sir.

6            So while you may want to offer evidence you

7    needn't offer it on the point of acceptance of

8    responsibility.

9            That concludes your statement of objection?

10            MR. TUCKER: Yes, Your Honor.  We will be offering

11    evidence.

12            THE COURT: All right, very good.

13            Mr. Smith, will you be offering evidence?

14            MR. SMITH: No, sir.

15            THE COURT: All right.

16            Mr. Young?

17            MR. YOUNG: No, sir.

18            THE COURT:  Mr. Tucker?

19            MR. TUCKER: Yes, sir.

20            THE COURT: You may proceed.

21            MR. TUCKER:  I would first call Thelma Williams.

22            (WITNESS WILLIAMS SWORN)

23    THELMA WILLIAMS, a witness called by the Defendant, being

24        first duly sworn, testified as follows:

25    DIRECT EXAMINATION,

_14

9

| | | |
|---|---|---|
| 1 | | QUESTIONS BY MR. TUCKER: |
| 2 | Q | Ms. Williams, could you state your name. |
| 3 | A | Thelma... |
| 4 | | THE COURT: Hold on just a second. |
| 5 | Q | Ms. Williams, can you state your name to the Court, |
| 6 | | please. |
| 7 | A | Thelma Williams. |
| 8 | Q | How long have you know the Defendant Bonnie William |
| 9 | A | Two and a half, three years. |
| 10 | Q | In what capacity have you known him? |
| 11 | A | Excuse me? |
| 12 | Q | How--how do you know him?  What's your relationship |
| 13 | | him? |
| 14 | A | My boyfriend. |
| 15 | Q | Is he the father of your child? |
| 16 | A | Yes. |
| 17 | Q | How many children do you have? |
| 18 | A | Three. |
| 19 | Q | Has he--what's his relationship with the three chil |
| 20 | A | Well, he's like a father to them because they're the |
| 21 | | father that he knows. |
| 22 | Q | Does--does he provice financial support? |
| 23 | A | Yes. |
| 24 | Q | Does he spend time with your children? |
| 25 | A | Yes. |

10

1   Q   What sort of activities does he engage in with the

2       children?

3   A   He plays with them.  If he goes anywhere he takes th

4       with him. He keeps them.

5   Q   Have you ever known Bonnie to be involved with a dru

6       transaction?

7   A   Yes.

8   Q   Other than this one?

9   A   No.

10  Q   Okay.

11  A   Not, no.

12          MR. TUCKER:  I have no further questions.

13  CROSS EXAMINATION,

14      QUESTIONS BY MR. BRADFORD:

15  Q   In otherwords, he admitted to you that he was involv

16      in this particular offense, hasn't he?

17  A   Yes.

18          MR. BRADFORD:  No further questions.

19          THE COURT:  You may step down.

20          (WITNESS WILLIAMS EXCUSED)

21          MR. TUCKER: May it please the Court, next we wou

22      call Margaret McCoy.

23          THE COURT: All right.

24          (WITNESS MCCLOY SWORN)

25  MARGARET MCCLOY, a witness called by the Defendant, being f

11

1     duly sworn, testified as follows:

2     DIRECT EXAMINATION,

3           QUESTIONS BY MR. TUCKER:

4     Q    Ms. McCloy, could you please introduce yourself to

5     Court?

6     A    Yes.  I'm Margaret McCloy.

7     Q    All right.

8           THE COURT: Is that M-C...

9     A    M-C-C-L-O-Y.

10          THE COURT: Thank you.

11    Q    How did you come to know Bonnie Williams, the Defend

12    A    I came to know Bonnie when he was in Junior High.  He

13    been  brutally  attacked  on  the  campus  by  a  w

14    prejudiced non-student. And I called the family aft

15    talking with friends and acquaintances to see if we c

16    offer some assistance if the child needed plastic

17    surgery.

18    Q    Did you have other contacts with Bonnie?

19    A    Yes, after that time, the children Bonnie and his sis

20    were brought to my home by the father.  Usually at

21    Christmas time they would bring a gift and come an

22    spend time with me.  I have a--I had invited Bonnie

23    to birthday parties of my children in the home and

24    had taken him on several trips to the mountains wi

25    my children.

12

1    Q    What sort of family does he come from?

2    A    I believe that this family is a very christian famil[

3         They have very worthwhile values.  I like the family

4         very much.  I respect them.

5    Q    Have you ever known Bonnie to be involved with any

6         illegal activities?

7    A    No, I have not.

8              MR. TUCKER: I don't have any further questions,

9         Honor.

10             MR. BRADFORD: No questions, Your Honor.

11             THE COURT: Thank you very much.

12             WITNESS MCCLOY:  Thank you.

13             (WITNESS MCCLOY EXCUSED)

14             MR. TUCKER: May it please the Court, next we w

15        call Pastor Sarah Blackburn, please.

16             (WITNESS BLACKBURN SWORN)

17        PASTOR  SARAH  BLACKBURN,  a  witness  called  by

18        Defendant, being first duly sworn, testified as

19        follows:

20   DIRECT EXAMINATION,

21        QUESTIONS BY MR. TUCKER:

22   Q    Pastor Blackburn...

23   A    Yes, sir.

24   Q    ...could you identify yourself to the Court, please

25   A    Yes, sir.  My name is Pastor Sarah Blackburn from Hic

- 68 -

13

1       North Carolina.

2   Q   How long have you known the Defendant Bonnie Willia

3   A   All his life.

4   Q   How long have you known his parents?

5   A   I knew the parents--his parents before he was ever b

6   Q   Well he has a home...

7   A   They come...

8   Q   ...what sort of a home life has he had?

9   A   Lovely christian home.  Christian family.

10  Q   Do you have any personal knowledge of any illegal

11      activities on the part of Bonnie other than this

12      activity he's been charged with, that he's here tod

13      for?

14  A   No, sir.  No, sir.

15          MR. TUCKER: I have no further questions, Your Ho

16          MR.          No questions, Your Honor.

17          THE COURT: Thank you very much.  You may step d

18          (WITNESS BLACKBURN EXCUSED)

19          MR. TUCKER:  May it please the Court, next we w

20      call Monice Gaither.

21          (WITNESS GAITHER SWORN)

22  MONICE LAVERNE GAITHER, a witness called by the Defens

23  -     being first duly sworn, testified as follows:

24  DIRECT EXAMINATION,

25          QUESTIONS BY MR. TUCKER:

-69-

14

1   Q   Ms. Gaither, could you identify yourself to the Cou

2       please.

3   A   Yes.  Monice LaVerne Gaither.

4   Q   And how do you know Bonnie Williams?

5   A   He's the father of my three kids.

6   Q   And what are the ages of those--those three childre

7   A   Six, three and one.

8   Q   What sort of a father is he?

9   A   He's a good father. He...

10   Q   I'm sorry?

11   A   He's good with them.  He takes time out for them.

12   Q   He spends time with them?

13   A   Yes.

14   Q   Does he financially support the children?

15   A   Yes.

16   Q   How have the children reacted to his incarceration

17   A   My eldest little girl she's not doing too good in

18       school this year. I think that's--bad time with

19       she's so used to him being around her and everythi

20       And she don't get to see him this much.  She don't

21       --it.

22   Q   Before Bonnie was put into jail how often would he

23       your children?

24   A   About every day.

25   Q   Okay.

16

1    financially?

2    A    Well, he always had a job. He always worked. We alw

3         was close, you know, close family. Him and my wife

4         I have a daughter too, daughter older than him. And

5         we're real close. We always do things together. When

6         high school we always went to--I went to his track me

7         He was on the Junior Police Team in Hickory. We alw

8         went out of town together. To Atlanta, carrying--in

9         Hickory. We always went together on everything. We

10        a lot of fun together. But I have never known him to

11        anything like this before.

12   Q    So you've been close...

13   A    Real close.

14   Q    ...throughout the beginning--.

15   A    I have never seen--I have never seen him come in dru

16        smoking or anything like that. Never seen him do th

17   Q    --to use drugs?

18   A    No.

19            MR. TUCKER: I have no further questions, Your

20        Honor.

21            MR. BRADFORD: I have no questions.

22            THE COURT: Thank you, sir.

23            (WITNESS B. WILLIAMS SR. EXCUSED)

24            MR. TUCKER: Your Honor, I just have one more

25        witness I'd like to call. I'd like to call Christi

17

1    Nichol.

2        THE COURT: All right.

3        (WITNESS NICHOL SWORN)

4    CHRISTINE NICHOL, a witness called by the Defendant, bein

5        first duly sworn, testified as follows:

6    DIRECT EXAMINATION,

7        QUESTIONS BY MR. TUCKER:

8    Q    Ms. Nichol, could you identify yourself to the Court

9        please.

10   A    I'm Christine Nichol, a U.S. Probation Officer in

11       Hickory.

12   Q    And you, in the course of your responsibilities and

13       duties, you did the investigation on Bonnie William

14       did you not?

15   A    I did.

16   Q    And what did that investigation turn up regarding

17        support and structure down there in Hickory where

18       from?

19   A    Pardon me?

20   Q    What did that investigation reveal regarding his

21       support and structure down there in Hickory where

22       he's from, family and friends?

23   A    I received several letters from some of the people yo

24       had up here this afternoon and others in the commun

25       that spoke well of Mr. Williams--Williamson--Willia

18

1   Q   Did you have a letter from a police officer down the

2      in Hickory?

3   A   I did.

4   Q   What was the content of that letter?

5   A   Just expressing support and concern for Mr. William

6      Also it indicates that he knew the Defendant from h

7      involvement in a youth program for twelve to thirte

8      year olds. And that he was impressed by his partici

9      pation in that and thought he came from a good fami

10     MR. TUCKER: I don't have any further questions

11    Your Honor.

12     MR. BRADFORD:  No questions.

13     THE COURT:  Thank you.  Thank you.

14     (WITNESS NICHOL EXCUSED)

15     MR. TUCKER: Your Honor, that would conclude ou

16    evidence.  We don't have anything to argue at this

17    point.

18     THE COURT: All right.

19     I take it there's no other evidence, then, fro

20    any of the Defendants?

21     MR. YOUNG:  We'd just like to be heard, Your Ho

22    in argument.

23     THE COURT: All right.

24     Is this--Mr. Smith?

25     MR. SMITH:  Yes, sir.

-74-

19

1    THE COURT: Madam Clerk.

2    Mr. Bradford, will the Government--is the Gover

3    ready to do the factual basis at this point?

4    MR. BRADFORD: Yes, sir.  If I could have just

5    moment, I'll turn to the page.  I'm gonna read it

6    the record without objections from the Defendants.

7    Your Honor, I'll start off, if I can, by just

8    covering the offense conduct which appears on page

9    two and three of the pre-sentence report.  If Your

10   wants I can read that into the record.

11   THE COURT: I have read it and the Defense cou

12   indicates they've all read it also.

13   MR. BRADFORD: Very good.  The only addition to

14   would be there was an interview with several of th

15   individuals.  And with one of them Mr. Williams indi

16   that when they got ready to leave that Mr. Cradle

17   handed the bag of cocaine, I believe, to Mr. Wilson

18   held--who held the cocaine. And then it was ultima

19   handed to Mr. Williams. And then when this--when t

20   suddenly saw the police were after them and then w

21   they ended up stopping the car they made a run for

22   One of the individuals ended up with the cocaine.

23   I think the significance of that on a factual basi

24   that all three of them, actually, during the chase a

25   time or another held the cocaine in their hands o

20

1    the period of time that they were being sought by t

2    police.

3        The evidence would also show that the instigat

4    of this was Mr. Cradle who came down from New York,

5    was previously convicted. And he was the one who got

6    other two individuals involved in this particular

7    adventure.

8        That in addition to what's in the--conduct in

9    pre-sentence report, the Government would rest on t

10    factual basis. This was all crack cocaine.

11        THE COURT: All right.

12        I'll ask the Defense, then, through counsel, do

13    all accept the statement set forth on page two and t

14    of the PSI and Mr. Bradford's verbal addendum to it a

15    factual basis in this case?

16        MR. SMITH:  As for Mr. Cradle, he would accept

17    statement.

18        THE COURT: All right, sir.  Mr. Young?

19        MR. YOUNG: Judge, my client will accept with

20    the exception of the statement, I think I heard Mr

21    Bradford  correctly in his addition, that they all r

22    I think. And my client tells me he didn't attempt

23    flee or run from the scene but remained there when

24    stop was made.

25        THE COURT: All right.

21

MR. TUCKER:  May it please the Court, my clien[t]
advises me that he would accept the statement in i[ts]
entirety.

THE COURT:  All right. Thank you very much.

MR. BRADFORD:  Your Honor, that would be throu[gh]
fourteen on page three, if there's any question ab[out]
it.  All the way down to paragraph fourteen where [it]
lists the weight of the cocaine.

THE COURT: All right.

MR. BRADFORD:  Thank you, Your Honor.

THE COURT: Let the record show that based upo[n]
Defendant's admissions and pleas of guilty and the
evidence presented the Court finds there is a fact[ual]
basis for the plea in each case and hereby affirms [the]
acceptance of those pleas and enters thereupon a ve[rdict]
of guilty.

All right, Mr. Smith, would you be heard at t[his]
time?

MR. SMITH:  Yes, sir.

If it please the Court, I can't add anything
to the pre-sentence report other than, of course,
we had objected to and made reference to previous[ly]

Mr. Cradle is aware of the mandatory mi[nimum]
sentence that he is facing. And he's also aware of
his involvement, of course, in this whole offense

-77-

22

1    he's been willing to accept the responsibility for

2    his actions. Even when Mr. Bradford indicated that

3    Cradle is the one who basically instigated this who

4    affair, Mr. Cradle has accepted that responsibility

5        And, of course, as Your Honor knows, he is from

6    York, lives in New York. He was arrested on the spo

7    on April 30th of this year and has been in custody

8    since. For some short period of time he was in cus

9    on state charges and these charges came up as well.

10    course, Your Honor is aware that Mr. Cradle was on

11    probation at the time that this happened from the N

12    York offense. And, therefore, the statute kicks in u

13    if we were--if it were not for that we would argue

14    Mr. Cradle would be looking at a level, offense lev

15    of thirty in a category two, which is where the oth

16    Defendants are, I believe, looking at a hundred and

17    eight months to a hundred and thirty five months.

18    simply for the fact that he has this prior convict

19    he's looking at about twice what the guidelines wo

20    have given him otherwise in terms of the mi

21    mandatory time.

22        I would just like to argue to the Court and p

23    that the Court impose only mandatory minimum time

24    not go beyond that because of this main, mainly th

25    factor in that this one other conviction. Just on

23

1   other conviction is enough to double his time.

2       Of course, unfortunately Mr. Cradle I'm sure was

3   aware of that before he got involved in this busin

4   And if he had been aware of that it might have chan

5   his mind about his conduct. Now, of course, it's t

6   late for him to find out about that. But we would j

7   ask the Court to be as merciful as possible. Pre-sent

8   report in terms of fines and his financial indicates

9   he has no financial ability to pay for virtually

10  anything. Of course, he has been in custody since A

11  30th and hasn't been bringing any kind of income.

12  I don't think that he had much capability of earning

13  an income prior to that even when he was out. Alth

14  he tells me that he's been working with his family a

15  his adult life in one capacity or another.

16      Mr. Cradle, I would offer him to the Court, if

17  Your Honor would like to hear from him.

18      THE COURT: Mr. Cradle, would you care to make

19  kind of statement at all at this time?

20      MR. CRADLE:  I will make a statement, Your Hon

21      THE COURT: Please do.

22      MR. CRADLE: I'm sorry I brought these men in t

23  crime that I committed. And I'm really sorry, you

24  --you on this crime.  And that's all I can say, You

25  Honor.

24

1        THE COURT: All right, sir.  Thank you very muc[h]

2        DEFENDANT CRADLE: Thank you.

3        MR. SMITH: That's all.

4        THE COURT: I think we'll proceed to hear from ot[her]

5    and we'll come back to you.

6        MR. YOUNG: Thank you, Judge.  Your Honor, Paul

7    seated before you basically a broken man. I've talk[ed]

8    to him several times and we keep going back over an[d]

9    over this conduct and--and how particularly strict

10    federal court is on such behavior. And I respect Mr[.]

11    Smith's client for what he just said to the Court i[n]

12    saying I'm sorry I got these men involved in this

13    crime.

14        Now, Paul Wilson tells me he barely knew this

15    and had just known him for a brief period of time.

16    I guess, Your Honor, he was more or less what I cal[l]

17    mule or just somebody to help deliver or help prepa[re]

18    these drugs.  He made very little, if any, compensa[tion]

19    from this activity. And he basically tells me he rec[eived]

20    a phone call and said do you want to make a couple

21    quick bucks and these are the most expensive quick b[ucks]

22    he's ever agreed to make in his life.

23        He keeps bringing up to me about his children,

24    Honor, he has two.  His fiancee is here and she's i[n]

25    courtroom back there with his mother.  One of them

— 80 —

25

1  think, Your Honor, he's never even seen, just a few

2  months old. So he's real concerned about trying to g

3  back and get reunited with his family.  I spoke with

4  his mother, she's also here, she's extremely upset

5  for good reason.

6      And, Judge, if you look at the criminal history

7  of Paul it's relatively minor.  I certainly hope, Ju

8  and of course Your Honor does know and I mean, when

9  were going over our options in this--in this case fr

10  the first he said go over to the U.S. Attorney and y

11  know, I'll do anything I can to--to reduce this sente

12  and they've all agreed, which I think is admirable,

13  assist the Federal Government in this case in furthe

14  investigations, if any.

15      But from right at first he admitted

16  responsibility to me, Judge. And it's hard to talk

17  to--to tell this young man the amount of time he's

18  facing because of the shear mountain type of these

19  drugs that were involved.

20      And, Judge, for all of those reasons, for what

21  we would say his minimal role and his family situati

22  for his mother, for his children, for his future, w

23  hope Your Honor will give him the minimum in this

24  case and hopefully he can come back and provide mor

25  for the Government and get some further assistance

26

far as his sentence.

THE COURT: All right, sir.  Thank you.

I will note it states minor detail on the front

page of his PSI that his age is twenty--either twenty

seven or twenty eight, is that correct?

DEFENDANT WILSON:  Excuse me.

MR. YOUNG:  Age?

DEFENDANT WILSON: I'm twenty.

MR. YOUNG:  Twenty.

THE COURT: Date of birth 1962?

DEFENDANT WILSON: No, '69.

MR. YOUNG:  '69.

THE COURT: '69, that's the error then.

MR. YOUNG: He is just twenty, Your Honor.

THE COURT: All right.

MR. YOUNG: Paul, would you like to address the

Court?

DEFENDANT WILSON: Yes.

THE COURT:  Well, let me get this detail right.

You say you were born in 1969, so you're presently

twenty?

DEFENDANT WILSON: Yes, sir.

THE COURT: It's indicated on page four that a

offense of larceny was committed at age twenty six.

That's pretty tough to do if you're only twenty now.

27

1    So, I take it there's some error there?

2    MR. YOUNG: Yes, sir.

3    Well, we agreed with the convictions and read

4    but must have missed that, Your Honor. Larceny

5    conviction.

6    THE COURT: Well, when did that occur, well it

7    apparently occurred in 1989. All right. All righ

8    Let's go on then. That's all that you have to

9    say about that?

10   MR. YOUNG: Yes, sir.

11   THE COURT: All right.

12   Mr. Wilson, would you care to say anything in

13   own behalf at this time, sir?

14   DEFENDANT WILSON: Yes, sir.

15   I'm sorry I got into this. It's hard being i

16   here because I've never been away from my family n

17   more than twenty days. And all this time in here ha

18   been hard, you know what I mean. And I hate to

19   think about my--my kids, one I never seen, growing

20   without a father. I grew up without a father and

21   I can't see my kids doing that. My fiancee grew u

22   without a father and I don't want her to go throug

23   with my kids-go through the same thing I went thro

24   And I ask the Judge, Mr. D.A. to have mercy upon m

25   And find it in your heart to give me as little as

28

1   possible, I guess. So.

2       THE COURT:  Thank you very much, Mr. Wilson.

3       Mr. Tucker?

4       MR. TUCKER: Your Honor, with regard to all thr

5   of these men I think this is a very sad situation.

6   There's my client, he's got four children. And thes

7   children are victims of this victimless crime. He's

8   got one child seven months old and he's got, as

9   we heard from Monice, he's got other children, thre

10  daughters ranging six, three and one.

11      At the time of the commission of this offense

12  Williams was out of a job, he didn't have the money

13  Hickory is a depressed area and these people are pr

14  That is not an excuse to break the law. But I say t

15  Your Honor, by way of hoping that Your Honor can cor

16  that in imposing sentence.

17      I would ask Your Honor to consider any alterna

18  that might be applicable in this situation. These fel

19  have committed a very serious crime. But the percep

20  among a lot of people in the community is that what

21  did is quote "not that big of a deal" unquote.  It

22  big deal especially in the federal court.  But they

23 - all the time how the recession is, commit a crime a

24  you're out of prison in no time. That's not the way

25  it should be but I think that's the perception of a

of people.  These fellows didn't understand what the

were doing here.

Mr. Williams tells me that he was approached bec

Mark Tandy, who really ought to be sitting in this

courtroom right now, had been shot on a drug deal a

was not able to do whatever was required by the man

New York.  So he was recruited and paid a very small

of money considering the amount of money that was bro

in or could have been brought in had all this coc

been sold on the street.  Some bills were flashed in

face more or less and he was facing the situation of

having any money.  Money to support his children.

he figured well I'll just make a quick buck.  There

no evidence that he's ever done anything like

before.  And I think, Your Honor, that the circumsta

caught Bonnie in a situation where he was the most

susceptible to this sort of an opportunity, perceiv

opportunity.  And a few hours later he finds himsel

in custody, his whole life is ruined because he mad

one bad mistake.

Your Honor, I--I've told the District Attorney

U.S. Attorney that he'd be more than happy to coope

and testify against any other individuals that migh

be involved in this. And the only one we know of is

Mark Tandy and it's my understanding he's now free

30

1   in Hickory.

2       Your Honor, we would ask you to consider the

3   impact of what's happened. Not just on Bonnie but

4   on his four children as well. As Paul Wilson said

5   it's not gonna be easy for these kids to be raised

6   without a daddy. And they've had a daddy up until

7   Bonnie made this mistake. And Bonnie made the mista

8   and he's gonna have to pay for it. To the extent

9   possible, Your Honor, we ask that only Bonnie pays

10  the mistake and not his children. And we also ask t

11  Your Honor consider his history of not having any

12  criminal activity and give him the least sentence

13  possible.

14      Thank you.  I believe he would like to address

15  Your Honor.

16      THE COURT:  All right, sir.  Mr. Williams.

17      MR. WILLIAMS: I want to say I'm sorry for the c

18  I committed. And I ask to provide me one more chance

19  have mercy on--too.  I'd like to raise my kids so t

20  don't get into nothing like this, Your Honor.  And

21  I'm sorry.

22      THE COURT:  All right, sir.  Thank you very m

23      Anything further, Mr. Bradford.

24      MR.BRADFORD:  Just, Your Honor, the--this app

25  to be a case of just total irresponsibility. The

31

```
1    acceptance of responsibility that these people are
2    taking in this case may well be the first time they
3    have accepted responsibility for anything in their
4    lives.  They all have kids out of wedlock. I mean,
5    here's this fellow here he's--poor old Bonnie, he's
6    down--he got beat up at the school. Poor old Bonnie
7    comes over at Christmas.  Poor old Bonnie, and then
8    has four kids out of wedlock who probably, if the t
9    is known, the tax payers of this country are support
10   And now he comes in here and he's in a situation wh
11   he's given an opportunity to do the right thing and
12   the wrong thing and what does he do:  he takes it,
13   instead of having a regular job shows his kids arou
14   alot,  instead  of  having  a  regular  job,  he
15   employment in an organization where the last perso
16   in his position got shot.  Boy that's a genius thi
17   to  do.  But  it's  about  time  that  these men
18   responsibility for what they're doing and start gr
19   up and--he may have been dealt a worse hand than so
20   the rest of the people in this courtroom today. Bu
21   the song says, every hands a winner and every ha
22   looser and he's the one who's turned his life into
23   loss at this point. And his kids may have to suffe
24   that's on his shoulders and that's on his shoulder
25   that's on his shoulders. Because they had the choi
```

1   to do it and they made the wrong decision.

2       I just wanted to say that they--better for the r

3   of these people there that's in that community that

4   they think they didn't do a big thing they--change t

5   idea because this is a big thing and they're gonna f

6   out that they're not gonna be back in the community

7   for a long, long time.  If the rest of that communit

8   wants to do that, that's fine, because we'll take th

9   and put them up too.

10      Mr. Cradle, twenty years is the minimum senten

11  I think that would be appropriate in this case. And

12  agree with Mr. Smith, we don't ask for more.

13      These two Defendants we--I think the bottom en

14  of the guideline range in these particular cases wi

15  be enough. They both have small criminal records up

16  to this point and it's not the Government's intenti

17  to add any more time to them. But I do get tired of

18  apologies being made in this courtroom from people

19  have made bad choices with their lives. These men h

20  the choice to do the right thing. Hundreds of peopl

21  their identical situations make the right choices e

22  day and go out here and try to work hard and try to

23  support their families and try to do the right thin

24  And it is--it is a blow to them to think that these

25  people--for these people to come in and say they

33

1    couldn't have done the same thing. They could have,

2    they made the wrong choice and they're gonna be

3    justly punished for it today.

4        THE COURT: Anything further, then, from Defense

5    counsel?

6        MR. SMITH: No, sir.

7        MR. YOUNG: No, sir, Your Honor.

8        MR. TUCKER: No, Your Honor.

9        THE COURT: All right. Any reason why the senten

10   should not be stated at this time?

11       MR. SMITH: No, sir.

12       MR. YOUNG: No, Your Honor.

13       MR. TUCKER: No, Your Honor.

14       THE COURT: The Court will observe that the, as

15   been noted here already, the matter is a tragedy for

16   all concerned. In the first place it's a tragedy for

17   people who suffer from drug addiction. And, of cour

18   the reason you are all Defendants in this case is beca

19   as a part of the drug problem you contribute to dru

20   addiction, which makes an every expanding circle of

21   people who are either in jail or suffering outside

22   of jail from addiction. There are many ill effects

23   on society in general as a result of drugs. Fetus'

24   are--come into the world addicted. Any number of ev

25   arise from it. Other crimes, larcenies. And I thin

you gentlemen, the three of you are Defendants, are

able to understand these things.  It's most unfortu

--you're going to jail and you're around a lot of o

people who are part of the criminal culture and prob

the drug culture.  And I can only say that I hope t

each of you is able to remember the kind of good th

your counsel have said about you and remember that

is the kind of person that you are and that you will

to be when you get out of prison.

But the Court is going to sentence each of you

the minimum allowed by law.  And that is because--

because in large part of the good things your couns

said about you and because Congress has determined

get stiff sentences for what you've done and you

have to serve those sentences.

Pursuant to the sentencing reform act of 1984

it's the judgment of the Court that Defendant

Cradle is hereby committed to the custody of the

Bureau of Prison for a term of twenty years.

Upon release from imprisonment the Defendant s

be placed on supervised release for a term of ten

years.  Within seventy two hours of release from

the custody of the Bureau of Prison Defendant shall

report in person to the probation office in the

district to which he is released.  While on super-

1   vised release Defendant shall not commit another

2   federal, state or local crime. Shall comply with

3   the standard conditions adopted by the Court.

4      Defendant shall participate in a--in a program

5   of testing and treatment for drug or alcohol abuse

6   as directed by the probation officer until released

7   from the program by the probation officer.

8      Other conditions of supervised release: that

9   he not possess a firearm or other dangerous weapon.

10     That he pay a special assessment of one hundred

11  and fifty dollars, which is mandatory without inter

12  on a schedule to be established by the probation offi

13     Any reason why that sentence should not be impo

14  as stated, Mr. Smith?

15     MR. SMITH: No, sir. May it please the Court w

16  only ask that he be given credit for his pre-trial

17  confinement. He is given credit.

18     MR. BRADFORD: Thank you.

19     THE COURT: Now, then, with reference to Defend

20  Wilson. Pursuant to the sentencing reform act of

21  1984 it's the judgment of the Court that the Defend

22  is hereby committed to the custody of the Bureau of

23  Prisons for one hundred and eight months.

24     Upon release from imprisonment you shall be

25  placed on supervised release for the sum of five

36

1   years.  Upon release from imprisonment he shall

2   be--shall report in person to the probation office

3   in the district to which he is released.

4       Following supervised release he shall not

5   commit another crime, federal, state or local. Shall

6   comply with the standard conditions adopted by this

7   court and the following additional condition:

8       That he participate in a program of testing

9   and treatment for drug and alcohol abuse or both

10  as directed by the probation officer until released

11  from the program by the probation officer.

12      He shall further pay a fine, rather, a special

13  assessment, which is the mandatory assessment in the

14  amount of one hundred and fifty dollars without

15  interest on a schedule to be established by the

16  probation officer.

17      Any reason why this sentence should not be

18  imposed as stated?

19      MR. YOUNG:  No, sir, Your Honor.

20      THE COURT: All right.

21      In the case of Mr. Williams the Court acknowledg

22  of course, the presence of all those who have been h

23  and testified in this--in these cases.  And Mr. Will

24  is indeed fortunate to have the support that he had

25  particular.

37

1    All right.

2    Pursuant to the sentencing reform act of 1984

3    the judgment of the Court that Defendant Williams is

4    hereby sentenced to the custody of the Bureau of

5    Prisons for a term of ninety seven months.  Within

6    seventy two hours of release from the custody of the

7    Bureau of Prisons he shall report in person to the

8    probation officer in the district to which he is

9    released.

10    While on supervised release he shall obey all

11    laws, federal, state and local.  Obey the standard

12    comply with the standard conditions adopted by the

13    Court and the following additional conditions:

14    That he participate in a program of testing

15    or treatment for drug or alcohol abuse or both

16    as directed by the probation officer if deemed

17    necessary by the probation officer, until such time

18    Defendant is released from that program by the proba

19    officer.

20    Further, he shall not possess a firearm or oth

21    dangerous weapon.  That condition also applies in t

22    case of Mr. Wilson.

23    Further, Defendant shall pay the mandatory spe

24    assessment in the amount of one hundred and fifty

25    dollars without interest on a schedule to be establi

38

1    by the probation officer.

2    Any reason why this sentence should not be imp

3    as stated?

4    MR. TUCKER:  No, sir.

5    THE COURT:  The term of supervised release for

6    the--for Mr. Williams is five years.  That being

7    the guideline term.

8    Now, then, the sentences announced here for

9    each Defendant pertain to each of the three counts

10    and as among the counts they will run concurrently

11    Likewise, as to supervised--the terms of supervised

12    release.

13    Any questions--any reason the sentence should

14    not be stated--should not be posed as stated?

15    MR. TUCKER:  No, Your Honor.

16    MR. YOUNG:  No, Your Honor.

17    THE COURT:  All right.

18    Now, then, each Defendant is entitled to appe

19    the sentences. And you would do that unless your

20    plea agreements contain a provision that you will

21    not appeal.  You may talk with your attorney about

22    that.  You would appeal, if you are allowed to do

23    so, by giving notice to the Clerk of Court within

24    ten days of today of your intention to appeal.

25    All right.

39

1    Each of the other Defendants, likewise, is give

2    credit for time served.

3    Let the sentences be imposed as stated. It is

4    unfortunate that there may be people in the communi

5    who see that various people get out of jail in almos

6    time at all in the state court systems because they

7    full. Supposedly they're trying to build new priso

8    in the state system. But it may well be that that ca

9    some people to believe they can get by with crimina

10    activity. Pay little or no price for it. Unfortuna

11    for such people they come to the federal system and

12    they find there is plenty of room at the inn.

13    But, nevertheless, this Court believes that th

14    horror of drug use and addiction is bad enough that

15    sentences are well deserved. So, I--it's with a he

16    heart that I hand out any sentence to gentlemen lik

17    you that I--I'd rather see you playing football or

18    something of that nature, good for you. And helpin

19    your families that you've talked about, your childr

20    That isn't the case here, so we have a heavy burden

21    that falls on all of the participants in a process

22    such as this.

23    Thank you all very much.

24    MR. YOUNG: Thank you.

25    MR. TUCKER: Thank you, Your Honor.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH CAROLINA

STATESVILLE DIVISION

UNITED STATES OF AMERICA           *
                                   *
        Plaintiff                  *
                                   *  ST-CR-90-17-3
VERSUS                             *
                                   *  SENTENCING
MARIO CRADLE, B.E. WILLIAMS, AND   *
PAUL E. WILSON                     *
                                   *
        Defendants                 *

### CERTIFICATE OF REPORTER

I, Bill Hogan, do hereby certify that the above and fo-

going transcript, consisting of Pages 1 through 40 is a t

and correct and accurate transcript of the proceedings as

requested to be transcribed, had in the hearing of the ab

cause on October 9, 1990, before Honorable Richard L.

Voorhees, Judge of said Court, as reported and transcribe

me as Official Court Reporter for the above Court.

This transcript has been produced in accordance with

28 USC 753 and the written request by the ordering party.

page rates charged for the this transcript are those in ef

at the time of typing, and the rates as posted in the Distr

Clerk's Office and the Official Court Reporter's Office.

_____

Bill Hogan, Official Court Report

Exhibit "C"

Exhibit C

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 00-7187

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARIO LEONARDO CRADLE,

Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (CR-90-17-ST, CA-95-121-5-V)

---

Submitted: October 12, 2000        Decided: October 20, 2000

---

Before WILLIAMS and MOTZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Dismissed by unpublished per curiam opinion.

---

Mario Leonardo Cradle, Appellant Pro Se. Brian Lee Whisler, UNITED STATES ATTORNEY'S OFFICE, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Mario Leonardo Cradle seeks to appeal the district court's order denying his motion filed under 28 U.S.C.A. § 2255 (West Supp. 2000). We dismiss the appeal for lack of jurisdiction because Cradle's notice of appeal was not timely filed.

Parties are accorded sixty days after entry of the district court's final judgment or order to note an appeal, see Fed. R. App. P. 4(a)(1), unless the district court extends the appeal period under Fed. R. App. P. 4(a)(5) or reopens the appeal period under Fed. R. App. P. 4(a)(6). This appeal period is "mandatory and jurisdictional." Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264 (1978) (quoting United States v. Robinson, 361 U.S. 220, 229 (1960)).

The district court's order was entered on the docket on September 19, 1996. Cradle's notice of appeal was filed on August 17, 2000. Because Cradle failed to file a timely notice of appeal or to obtain an extension or reopening of the appeal period, we deny a certificate of appealability and dismiss the appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

DISMISSED

2

Exhibit "D"

Probation Form 27
(7/75)



UNITED STATES DISTRICT COURT
FEDERAL PROBATION SYSTEM

TRANSMITTAL OF PRESENTENCE REPORTS
TO INSTITUTION

Address of Probation Office

Chief U. S. Probation Office
227 Federal Building
401 West Trade Street
Charlotte, N. C. 28202

Date ___October 25, 1990___

Mr. Larry Jones
Correctional Management Center
P.O. Box 27743
Raleigh, N.C. 27611

Enclosed are two copies of the presentence report made in the case of:

Mario Lenardo CRADLE

In custody.

S. Thomas Noell, Jr., Chief
U. S. Probation Officer

cc: Probation Officer McLean
Hickory, NC

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA )
)
vs )       Docket No. ST-CR-90-17-1
)
MARIO LENARDO CRADLE )

PRESENTENCE REPORT

**Prepared for:** Honorable Richard L. Voorhees   Sentencing Date: October 1990
United States District Judge

**Prepared by:** James R. McLean, Jr.           Office Location: Hickory, NC
United States Probation Officer

**Offense:** 21 USC section 841(a)(1) and 846--Conspiracy to Manufacture and
Possess with Intent to Distribute in Excess of 50 Grams of
Cocaine Base; Manufacturing in Excess of 50 Grams of Cocaine
Base; Possessing with Intent to Distribute in Excess of 50
Grams of Cocaine Base; and Aiding and Abetting

Date of Arrest: June 21, 1990

Custodial Status: Detained Since June 21, 1990

Identifying Data

Date of Birth: April 23, 1962    Age: 28    Citizenship: US Citizen
Race: Black                 Sex: Male    Dependents: One
FBI No.: 858 397 LAO    SSN: 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    Other ID No.: NYSID 58834
Education: 10th Grade         U. S. Marshal No.:
Legal Address: 719 Alabama Avenue
                Brooklyn, NY 11207

Detainers:

Codefendants: Bonnie Eugene WILLIAMS, Jr. (ST-CR-90-17-02)
              Paul Eric WILSON (ST-CR-90-17-03)

Assistant U. S. Attorney                 Defense Counsel

Max O. Cogburn, Jr.                      Roger T. Smith
306 US Courthouse                        P. O. Box 7172
100 Otis Street                          Asheville, NC  28802
Asheville, NC  28801-2611                (704) 254-4658
(704) 259-0661

Date Report Prepared: September 14, 1990   Mandatory Minimum: Yes

## PART A.   THE OFFENSE

### Charge and Conviction

1. Mario L. Cradle, the defendant was indicted in three counts by a Western District Of North Carolina Grand Jury on June 6, 1990. Count One charged that on or about April 30, 1990, the defendant did conspire with others to manufacture and possess with intent to distribute in excess of 50 grams of cocaine base, in violation of Title 21 U.S.C. section 846. Count Two charged that on April 30, 1990, the defendant did manufacture and aid and abet others in the manufacturing of in excess of 50 grams of cocaine base, in violation of Title 21 U.S.C. section 841(a)(1); Title 18 U.S.C. section 2. Count Three charged that on April 30, 1990, the defendant did possess with intent to distribute and aid and abet others in the possession with the intent to distribute in excess of 50 grams of cocaine, in violation of Title 21 U.S.C. section 841(a)(1); Title 18 U.S.C. section 2.

2. On August 22, 1990, pursuant to a written Plea Agreement, Cradle pled guilty to the three-count Bill of Indictment.

3. Since the offense took place after November 1, 1987, the Sentencing Reform Act of 1984 is applicable.

### Related Cases

4. Bonnie Eugene Williams, Jr., codefendant in ST-CR-90-17-02, was also indicted in the three-count Bill of Indictment. On August 7, 1990, Williams entered a plea of guilty to the indictment pursuant to a written Plea Agreement. Sentencing date has been set for the October 1990 Term of the United States District Court, Statesville, North Carolina.

5. Paul Eric Wilson, codefendant in ST-CR-90-17-03, is charged also in the three-count Bill of Indictment. On August 9, 1990, Wilson entered a plea of guilty to the indictment pursuant to a written Plea Agreement. Wilson is to appear before the United States District Court, Statesville, North Carolina, during the October 1990 Term for sentencing.

-1-

The Offense Conduct

6.  On or about April 30, 1990, J. L. Eddins, investigator
    for the Hickory Police Department, received information
    from a confidential source that the codefendants were
    involved in the cooking of crack cocaine at 1259 22nd
    Street, SW, Hickory, North Carolina. As a result of
    this information, a surveillance team consisting of
    Sergeants D. R. Carlsen, C. J. Deal, Investigators
    J. L. Blackburn, L. H. Caudill, Officer G. A. Shook
    from the Hickory Police Department, and Special Agent
    Daniel Dubree, FBI Office, Hickory, North Carolina,
    began a surveillance of this residence.

7.  Investigator Eddins's report indicates the surveillance
    team observed several individuals entering and leaving
    the residence located on 22nd Street, NW. After
    approximately four hours of surveillance, the
    defendants left the apartment and got into their
    vehicle. As the defendants' vehicle was traveling away
    from the immediate area, the defendants saw Officer
    Shook's marked patrol unit and attempted to return to
    the apartment with the officers in pursuit.

8.  Upon the defendants' vehicle reaching the apartment
    area, Williams exited the vehicle and was observed
    running from the area with a white bag in his hand.
    Williams later was apprehended by Officer Shook.

9.  Subsequent interviews with witnesses in the area led
    officers to a leaf pile. It was reported that this
    leaf pile was where Williams had disposed of the items
    he had been carrying. A search of the pile led to the
    recovery of two plastic bags of crack cocaine.

10. A search was also conducted of the vehicle and the
    brown paper bag which Williams was observed placing in
    the trunk was recovered. This brown paper bag
    contained scales, razor blades, coffee pot, plate with
    residue, spoon with residue, baking soda and an
    undetermined amount of clear plastic bags with the
    corners cut out.

11. Law enforcement officers attempted to interview Paul
    Eric Wilson; however, Wilson made no statement.

12. Mario Cradle, after having had advised of his rights,
    stated he had traveled from Brooklyn, New York, to
    Charlotte, North Carolina, and was picked up by
    Williams and Wilson and taken to the Hickory area. He

-2-

further stated this was his second trip to Hickory, the last being approximately a month prior to his arrest. He stated the purpose of his travel to Hickory was to visit his brother, Mark Pandy. With regards to the crack cocaine, Cradle stated that he remained in the living room of the apartment while a black female and the other two black males cooked the cocaine.

13. Codefendant Williams was also interviewed following his arrest. Williams stated he did not have anything to do with the cocaine, only that he brought the man with the cocaine after someone else requested (Williams) do so. Williams stated the man he and Wilson picked up in Charlotte was Cradle. Williams further stated that at the time he ran from the officers, he had three bags of cocaine which he tried to conceal in the leaf pile before being apprehended. Law enforcement officers researched this leaf pile and located the third bag of cocaine.

14. On May 7, 1990, Jerry B. Thomas, of the North Carolina State Bureau of Investigation (SBI) analyzed the cocaine base involved in this offense. This analysis revealed the cocaine base to have a total weight of 139.77 grams.

Adjustment for Obstruction of Justice

15. The probation officer has no information that the defendant impeded or obstructed justice.

Adjustment for Acceptance of Responsibility

16. The probation officer has no information that indicates the defendant has freely admitted his total involvement in this instant offense.

Offense Level Computation

17. All counts in the indictment are grouped together pursuant to Section 3D1.2(d), that being the offense level is determined on the quantity of the substance involved.

18. Base Offense Level: The guideline for a 21 U.S.C. section 846 offense is Section 2D1.4 of the Guidelines. The guideline for a 21 U.S.C. section 841 offense is found in Section 2D1.1 of the Guidelines. These sections provide that offenses involving conspiracy to manufacture, possess, or trafficking in a controlled substance has a based offense level as determined by

-3-

2D1.1(a)(3). This offense involved 139.77 grams of cocaine base. The base offense level is therefore set at 32. Section 2D1.1(a)(3)(c)(6).    <u>32</u>

19. Adjustment for Role in Offense: None    <u>0</u>

20. Victim Related Adjustment: None    <u>0</u>

21. Adjustment for Obstruction of Justice: None    <u>0</u>

22. Adjusted Offense Level (Subtotal):    <u>32</u>

23. Adjustment for Acceptance of Responsibility: The defendant has not clearly demonstrated a recognition and an affirmative acceptance of his personal responsibility for his criminal conduct. Therefore, there is no adjustment to the offense level.    <u>0</u>

24. Total Offense Level:    <u>32</u>

PART B.  THE DEFENDANT'S CRIMINAL HISTORY

<u>Juvenile Adjudication</u>

25. None

<u>Criminal Convictions</u>

| <u>Date of Arrest</u> | <u>Charge/Agency</u> | <u>Date Sentence Imposed/Disposition</u> | <u>Guidel. Score</u> |
|---|---|---|---|
| 26. 5-13-87 (Age 25) | Criminal Possession of Controlled Substance, Class C Felony Supreme Court Brooklyn, NY | 12-8-87: Sentenced 1 day impr 5 yrs prob | 4A1.1( |

On May 13, 1987, in Brooklyn, New York, the defendant was arrested after complainant Valereia Lutz, claimed he had robbed her. At the time of his arrest, Cradle was searched and 37 vials of "crack" was found in his pants' pocket. Laboratory reports indicated that the 37 vials each contained cocaine and had a weight of 1/8 ounce plus 21.1 grains.

-4-

Criminal History Computation

27.  The criminal conviction above results in a subtotal
     criminal history score of 1.

28.  At the time the instant offense was committed, the
     defendant was on probation for the sentence of
     December 8, 1987.  Pursuant to Section 4A1.1(d),
     2 points are added.

29.  The total criminal history points is 3.  According to
     the Sentencing Table (Chapter 5, Part A) 2 to 3
     criminal history points establishes a criminal history
     category of II.

PART C.  SENTENCING OPTIONS

Custody

30.  Statutory Provisions:  The maximum term of imprisonment
     as to each count of the Bill of Indictment is life.
     Title 21 U.S.C. section 841(a)(1).

31.  Guideline Provisions:  Based on a total offense of 32
     and a criminal history category of II, the Guidelines
     Imprisonment Range is 135 to 168 months.  However,
     Section 5G1.1(b) sets these statutorily required
     minimum sentence as the guideline sentence, that being
     20 years.

Supervised Release

32.  Statutory Provisions:  A term of supervised release of
     at least 10 years also must be imposed.  Title 21
     U.S.C. section 841(a)(1).

33.  Guideline Provisions:  The guideline range for a term
     of supervised release is 10 years under Section
     5D1.2(a).

Probation

34.  Statutory Provisions:  Because the instant offense is a
     Class A Felony, the defendant is ineligible for
     probation, pursuant to Title 18 U.S.C. section
     3561(a)(1).

35.  Guideline Provisions:  Pursuant to Section 5B1.1(b)(1),
     the defendant is ineligible for probation.

PART D.   OFFENDER CHARACTERISTICS

Family Ties, Family Responsibilities, and Community Ties

36.   Mario Lenardo Cradle was born on April 23, 1962, in
      Brooklyn, New York, to Robert and Edna McGee Cradle.
      His father is a high school graduate and owns his own
      business.  The defendant's mother is a high school
      graduate also and works in the family business.  The
      defendant reports he was reared in a family consisting
      of three sisters and four brothers.  A Presentence
      Report prepared for the New York State Court lists the
      defendant's siblings as:  Calvin, Bernard, Arthur,
      Carlton, Joyce Harris, Norma Jamison, and Sara Cradle.
      This New York Presentence Report also reports that the
      defendant's brother Phillip was shot to death in 1978,
      at the age of 20 years old; Robert Cradle died of
      meningitis as a child.

37.   The defendant is single, and reports to be the father
      of a two-year-old daughter, Daria, who lives with her
      mother.

38.   On June 22, 1990, at this defendant's initial interview
      by the United States Probation Officer, Asheville,
      North Carolina, Cradle reported to have been living for
      the past 18 years in the home of his parents at 719
      Alabama Avenue, Brooklyn, New York.  Edna Cradle
      informed a probation officer of the Eastern District of
      New York, who visited her at her residence, that Cradle
      last lived at the family address approximately five
      years ago.  She further stated that since that time, he
      has only sporadically spent the night with the family.

Mental and Emotional Health

39.   According to the defendant, he has never suffered from
      any mental or emotional problems that would require
      professional intervention.

Physical Condition, Including Drug Dependence and
Alcohol Abuse

40.   Cradle is a black male, 5'5" tall, and weighs 170
      pounds with black hair and black eyes.  The defendant
      reports he is in good general health and denies any
      history of health problems.  He further denies ever
      using illegal drugs and reports never to have had a
      problem with alcohol abuse.

## Education and Vocational Skills

41. The defendant reports he dropped out of Jefferson High
    School, Brooklyn, New York, after completing the
    eleventh grade.  A transcript from the school indicates
    Cradle repeated the tenth grade in 1980 before dropping
    out during October 1980, at the age of 17 (verified).

42. This defendant reports no other formal school or
    vocational training.

## Employment Record

43. According to the defendant, since dropping out of high
    school, he has worked for the family business, S.B.C.
    Boiler Company, as a truck driver, earning
    approximately $500 per week.  Mrs. Edna Cradle verified
    this defendant did work consistently for the family
    business until January of 1990.

## PART E.   FINES AND RESTITUTION

### Statutory Provisions

44. As to each count, the maximum fine is $8,000,000.
    Title 21 U.S.C. section 841(a)(1).

45. As to each count, a special assessment of $50 is
    mandatory.  Title 18 U.S.C. section 3013.

46. The Victim and Witness Protection Act does not apply to
    Title 21 offenses.

### Guideline Provisions

47. As to each count, the fine range for this instant
    offense is a fine amount up to the maximum authorized
    by the statute.  5E1.2(c)(4).

48. Subject to the defendant's ability, the Court shall
    impose an additional fine amount that is at least
    sufficient to pay the cost to the government of any
    imprisonment, or supervised release ordered.  Section
    5E4.2(i).  The most recent advisory from the
    Administrative Office of the United States Courts,
    dated April 30, 1990, suggests that a monthly cost of
    $1,415.56 be used for imprisonment and a monthly cost
    of $96.66 for supervision.

### Defendant's Ability to Pay

49. This defendant reports he has no significant assets and reports the following liabilities:  Bank of New York, $1,200 payable at $100 per month; AGMC for a truck for which he owes $2,000 and makes a monthly payment of $200.

50. This defendant has been detained since his initial arrest in April of 1990.  He has no known income; therefore, he appears to be unable to pay a fine.


PART F.   FACTORS THAT MAY WARRANT DEPARTURE

51. The probation officer has not identified any information that would warrant a departure from the guidelines.

Respectfully submitted,

James R. McLean, Jr.
U. S. Probation Officer


JRMJr:jws


Reviewed and Approved:


9-18-70
Date                    Supervisor


-8-

Exhibit "E"

| PO | 419 | 5 | Assigned 1909 | | VS | CRADLE, MARIO LENA | | 06 06 90 | 00017 |
| Misd | 419 | 1 | Orig 1909 | ALIAS | | | | No of Det's | |
| Felony | District | Off | Judge/Magistr | OFFENSE ON INDEX CARD | | | | 3 Def's U.S. MAG. CASE NO. | |

## I. CHARGES

| US TITLE/SECTION | OFFENSES CHARGED | ORIGINAL COUNTS |
|---|---|---|
| 21: 841(a)(1) 846 | Conspiracy to unlawfully manufacture and possess w/intent to distribute in excess of 50 grams of cocaine base, a Sch. II narcotic controlled substance          Ct. 1 | 1 |
| 21: 841(a)(1) 18: 2 | Manufacturing in excess of 50 grams of cocaine base, a Sch. II narcotic controlled substance & aiding & abetting          Ct. 2 | 1 |
| 21: 841(a)(1) 18: 2 | Possessing w/intent to distribute in excess of 50 grams of cocaine base, a Sch. II narcotic controlled substance & aiding & abetting          Ct. 3 | 1 |

SUPERSEDING COUNTS

## II. KEY DATE

INTERVAL ONE — KEY DATE / EARLIEST OF: arrest, sum'ns, custody, appears-on complaint → KEY DATE **6-6-90** APPLICABLE

END ONE AND/OR BEGIN TWO (OR RESTART PERIOD TO TRIAL): Indictment filed/unsealed, consent to Magr. trial on complaint, Information, Felony-W/waiver → KEY DATE **6-22-90** — a) 1st appears on pending charge /R40, b) Receive file R20/21, c) Supsdg. Ind. Inf, d) Order New trial, e) Remand, f) JG/P Withdrawn

END INTERVAL TWO — KEY DATE **8-22-90** APPLICABLE

| 1st appears with or waives counsel | ARRAIGNMENT 6-25-90 | 1st Trial Ended | RE-TRIAL | 2nd Trial Began | DISPOSITION DATE 10-9-90 | SENTENCE DATE 10-9-90 | FTD Nolle Pros. | FINAL CHARGES DISMIS |

## III. MAGISTRATE

| | DATE | INITIAL.NO. | | | INITIAL.NO. | OUTCOME: |
|---|---|---|---|---|---|---|
| Search Warrant: Issued / Return | | | INITIAL APPEARANCE DATE ▶ | | | |
| Summons: Issued / Served | | | PRELIMINARY EXAMINATION OR REMOVAL HEARING | Date Scheduled ▶ / Date Held ▶ | | HELD FOR GJ OR OTHER / CEEDING IN THIS DISTRIC |
| Arrest Warrant Issued | | | WAIVED / NOT WAIVED | Tape Number | | HELD FOR GJ OR OTHER / CEEDING IN DISTRICT BE |
| COMPLAINT ▶ | | | INTERVENING INDICTMENT | | | |
| Date of Arrest | OFFENSE (In Complaint) | | | | | |

Show last names and suffix numbers of other defendants on same indictment/information:
→ Williams-2, Wilson-3

## IV. NAMES & ADDRESSES OF ATTORNEYS, SURETIES, ETC.

ATTORNEYS
U.S. Attorney or Asst.      Thomas J. Ashcraft, U. S. Atty., Charles R. Jonas Federal Bldg., 401 W. Trade St., Charlotte, N. C. 28202      (704) 371-6222

Defense: 1 ☒ CJA.   2 ☐ Ret.   3 ☐ Waived.   4 ☐ Self.   5 ☐ Non/Other.   6 ☐ PD.   7 ☐ CD

Roger T. Smith      SS# 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
Attorney At Law
P. O. Box 7172
Asheville, N. C. 28802

(704) 254-4658

Mario Lenardo Cradle      SS# 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
c/o Buncombe Co. Jail
Asheville, N. C. 28801

Address as of 1-20-95
FCI
Fort Dix East
Fort Dix, NJ 60649

Address as of 4-15-91
Mario Lenardo Cradle  08253-008
P. O. Box 9000
Seagoville, TX 75159

GOVERNMENT EXHIBIT E

RULE  20  21  40

BAIL • REL
PRE INDICT

Release Date
Bail / Denied
AMOUNT SET
$
Date Set
☐ Bail Not Made
Date Bond Made

POST-INDICT
Bail / Denied
AMOUNT SET
$
Date Set
☐ Bail Not Made
Date Bond Made

APPEALS FEE PA

| FINE AND RESTITUTION PAYMENTS | | | Docket Entries Begin On Reverse Side | | |
|---|---|---|---|---|---|
| DATE | RECEIPT NUMBER | C.D. NUMBER | DATE | RECEIPT NUMBER | C.D. NUMBER |
| | | | | | |

| DATE<br>DOCUMENT NO. | To:<br>90 | Docket No.<br>00017 | 01 | MASTER DOCKET - MULTIPLE DEFENDANT CASE<br>PROCEEDINGS DOCKET FOR SINGLE DEFENDANT | ⬜ of ⬜ | VI EXCLUDA<br>Start Date<br>End Date |
|---|---|---|---|---|---|---|

(OPTIONAL) Show last names of defendants

### V. PROCEEDINGS

| 6-6-90 | 1. | Bill of Indictment | smj |
|---|---|---|---|
| 6-11-90 | 2. | Request For Issuance Of Warrant by U. S. Attorney | smj |
| 6-12-90 | | Issuing Warrant for Arrest and sending to U. S. Marshal in Charlotte for service.  cc:  U. S. Atty. & U. S. Magistrate- Asheville & Charlotte<br>file to Clerk's Office in Asheville | smj |
| 6-22-90 | | Defendant is arrested and brought before Magistrate Davis for Initial Appearance.  Defendant requests court appointed counsel and Roger T. Smith is appointed to represent him.  AUSA Marshall represents the government.  Defendant received a copy of the charging documents and understands the charges.  Defendant is returned to the custody of the U. S. Marshal.  Detention hearing is scheduled for June 25, 1990 at  8:30 a. m. | smj |
| 6-22-90 | 3. | Defendant's Election And/Or Waiver of Counsel - requests CAC | smj |
| 6-22-90 | 4. | Financial Affidavit | smj |
| 6-22-90 | 5. | Appointment Of And Authority To Pay Court Appointed Counsel Roger T. Smith | smj |
| 6-25-90 | | Detention Hearing before Magistrate Davis in Asheville. Defendant is present with counsel and AUSA Cogburn represents the government.  Government's Motion for Detention is allowed.<br><br>Arraignment before Magistrate Davis - defendant is present with counsel and AUSA Cogburn is present for the government. Defendant pleads not guilty and requests a jury trial. Case is continued to the August 1990 Term in Statesville. Defendant is returned to the custody of the U. S. Marshal. | smj |
| 6-25-90 | 6. | PRETRIAL ORDER (JTD) ordering that all pretrial motions must be in writing and filed within 15 days from this date and motions not timely filed will be summarily denied.<br>cc:  copies distributed by Clerk's Office in Asheville | smj |
| 6-26-90 | 7. | ORDER OF DETENTION PENDING TRIAL (JTD)<br>cc:  copies distributed by Clerk's Office in Asheville | smj |
| 6-26-90 | 8. | Marshal's return on Warrant For Arrest executed on 6-22-90 file rtd. | smj |
| 7-5-90 | 9. | Defendant's Request For Discovery And Inspection w/cs | smj |
| 7-13-90 | | file to Magistrate Davis | smj |
| 7-16-90 | 10. | MEMORANDUM (RLV) informing attorneys of record on the filing of Plea Agreement no later than August 9, 1990 for the August 22, 1990 Term.      cc:  attys. of record | smj |

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET   *U. S. vs*   MARIO LENARDO CRADLE

AO 256A

| DATE | PROCEEDINGS (continued) |
|------|--------------------------|
| | (Document No.) |
| 7-24-90  11 | ORDER (JTD) ordering that defendant's Request for Discovery and Inspection is deemed MOOT. |
| | This Order is entered in response to defendant's Request for Discovery and Inspection (#9). |
| | cc: attys. of record |
| | file rtd. |
| 8-9-90  12. | Plea Agreement  (copy to U. S. Atty. & U. S. Probation) |
| 8-15-90  13. | Motion To Continue by defendant w/cs |
| | (copy given to Judge's Office by Clerk's Office in Asheville) |
| 8-22-90 | Defendant sworn and present with counsel.  Plea changed to guilty as to all 3 counts in the bill of indictment.  Rule 11, FRCP, inquiry and findings made and accepted by Court. Factual basis and sentencing are continued to the October 1990 Term. |
| 10-2-90 | Issuing Notice for Factual Basis & Sentencing scheduled for Tuesday, October 9, 1990 at 11:30 A. M. in Asheville before Judge Voorhees |
| | cc:  deft., attys. of record, USM |
| | file to Asheville |
| 10-9-90 | Defendant appeared with counsel for Factual Basis & Sentencing before Judge Voorhees in Asheville.  Parties stipulated to Factual Basis stated by AUSA Cogburn.  Factual basis for guilty plea found by Court and affirms acceptance of guilty plea as to all 3 counts in the bill of indictment.  Enter verdict of guilty. |
| | Sentence of the court: |
| | TWENTY (20) YEARS on each of Counts 1, 2 & 3 to run concurrently to each count. |
| | TEN (10) YEARS supervised release on each of Counts 1, 2 & 3 to run concurrently to each count |
| | Conditions of supervised release: |
| | 1.  Within 72 hrs. of release from prison deft. is to report to the probation office in the district where released. |
| | 2.  Not commit any local, state or federal crimes. |
| | 3.  Obey standard conditions of supervised release. |
| | 4.  Participate in a program of drug and alcohol treatment and testing as directed by probation officer. |
| | 5.  Not possess a firearm or other dangerous weapon. |
| | Pay an assessment fee of $150.00 |
| 10-10-90 | file rtd. |

— 3 —

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET

USA vs. MARIO LENARDO CRADLE

AO 256A

| DATE | PROCEEDINGS (continued) —(Document No.)— | V. EXCLUDABLE | |
|---|---|---|---|
| | | (a) | (b) |
| 10-17-90 14. | JUDGMENT INCLUDING SENTENCE UNDER THE SENTENCING REFORM ACT USA-1, USM-3, USPO-1, Judgment Book-1 | (RLV) | smj |
| 10-25-90 15. | MEMORANDUM OF SENTENCING HEARING AND REPORT OF STATEMENT OF REASONS (RLV) cc: USPO-Charlotte & Federal Bureau of Prisons | | smj |
| 12-5-90 16. | Marshal's return on Judgment - defendant is delivered on 11-27-90 to FCI, Seagoville, Texas | | smj |
| 1-22-91 17. | Appointment Of And Authority To Pay Court Appointed Counsel in the amount of $692.40 | | smj |
| 1-22-91 | Receiving letter from defendant requesting that the letter be treated as a motion for leave to file late appeal (sending copy of letter & docket sheets to Judge Mullen) | | smj |
| 4-15-91 18. | Letter from defendant to the court reporter treated as a motion for the court to furnish transcripts of his court proceedings to him at government's expense Application To Proceed In Forma Pauperis attached file to Magistrate Taylor | | smj |
| 4-18-91 19. | ORDER (PBT) ordering that Defendant's motion to produce the sentencing transcripts at Government expense be, and the same is DENIED WITHOUT PREJUDICE. The Clerk is directed to certify copies of this ORder to Defendant and the United States Attorney. cc: defendant USA file received | | mer |
| 4-25-91 20. | Motion For Court Proceedings Transcripts At Government Expense (file to Magistrate Taylor) | | smj |
| 5-22-91 21. | ORDER (RLV) ordering that Defendant's motion to produce the Rule 11 and sentencing transcripts at Government expense be, and hereby is, DENIED WITHOUT PREJUDICE. cc: deft. & cnsl file rtd. | | smj |
| 4-9-92 22. | Transcript of Guilty Plea before Judge Richard L. Voorhees on 8-22-90 | | smj |
| 4-9-92 23. | Transcript of Sentencing before Judge Richard L. Voorhees on 10-9-90 | | |

-4-

Case 1:91-cr-00114-MHC-RLV Document 1 Filed 01/10/2007 Page 78 of 80

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET *U. S. vs*    MARIO LENARDO CRADLE    90   0

AO 256A ●

| | | Yr. | Do |
|---|---|---|---|

| DATE | PROCEEDINGS (continued) | V. EXCLUDA |
|------|---------------------------|-----|
| | ┤(Document No.)├─ | (a) | (b) |
| 1-20-95 | 24. Appellant, Filing Notice Of Appeal Of Sentencing Conviction | |
| 1-20-95 | 25. Appellant, Filing Notice For Transcripts Of Appellant Plea Hearing And Sentencing Hearing | |
| 1-24-95 | Sending Transmittal Sheet and copies of Notice of Appea docket sheets & Judgment Including Sentence Under The Sentencing Reform Act to Clerk, U. S. Court of Appeals   (also sending copy of Notice for Transcripts to Clerk, U. S. Court of Appeals) copy of Transmittal Sheet, docketing statement, & Notice of Appeal to deft. & copy of Transmittal Sheet & Notice of Appeal to U. S. Atty. | |
| 2-23-95 | file to Clerk in Asheville | SI |

Interval    Start Dat

Exhibit F

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. ST-CR-90-17-1

UNITED STATES OF AMERICA,       )
                                )
              vs.               )                    AFFIDAVIT
                                )
MARIO LENARDO CRADLE,           )
              Defendant.        )
_____ )

I, ROGER T. SMITH, being first duly sworn, depose and say as follows:

1. In response to Mr. Cradle's argument concerning his plea, based upon an agreement that he would receive a sentence based upon a Level of 32, my response is as follows:

During the negotiations with the Assistant United States Attorney, Max Cogburn, Jr., I calculated Mr. Cradle's potential sentence Base Offense Level being Level 32 with a criminal history category of III, which the Assistant United States Attorney agreed with me about. I also calculated Mr. Cradle's sentence based upon a career offender category. The plea agreement in and of itself does not contain any statement that Mr. Cradle would be sentenced as a Level 32 offender. It is entirely possible that Mr. Cradle entered a plea with the belief that he would be sentenced based upon the sentencing guidelines with a Base Offense Level of 32. However, prior to sentencing, and after receipt of the Pre-Sentence Investigation Report, Mr. Cradle was advised of the mandatory minimum 20-year sentence under the statute and he should have been fully aware that his sentence would be a twenty year sentence on the date of his sentencing.

2. In response to Mr. Cradle's allegation that I was ineffective in representing him because I failed to file a Notice of Appeal, I have no notes, letters, or recollection of Mr. Cradle ever asking me to file a Notice of Appeal on his behalf. The first time that I became aware that Mr. Cradle wanted an appeal of his case was on January 31, 1995, when the United States Court of Appeals for the Fourth Circuit contacted me and advised me that the Defendant had filed his own Notice of Appeal. I did receive a letter from Mr. Cradle on March 11, 1991, in which he asked me for a copy of any post-conviction Motions or Notice of Appeal filed on his behalf. However, the letter did not request that I file a Notice of Appeal. A copy of his letter and my response to his letter are attached and marked as Exhibits 1 and 2, respectively.

FURTHER AFFIANT SAITH NOT;  THIS THE 13th day of December, 1995.

Roger T. Smith, Attorney for Defendant
P.O. Box 7172
Asheville, NC  28802
704/254-4658

SWORN TO AND SUBSCRIBED BEFORE ME this the 13th day of December, 1995.

Mary Ella Read, Notary Public
My Commission Expires:   1-19-99

GOVERNMENT
EXHIBIT